RIKER DANZIG SCHERER HYLAND & PERRETTI LLP
Joseph L. Schwartz (JLS-5525)
Headquarters Plaza,
One Speedwell Avenue
Morristown, New Jersey 07962-1981
(973) 538-0800

Attorneys for Chicago Title Insurance Company

| | |
|---|---|
| In re:<br><br>SOLOMON DWEK,<br><br>                          Debtor.<br>_____<br><br>CHICAGO    TITLE    INSURANCE<br>COMPANY,<br><br>                         Plaintiff,<br><br>        vs.<br><br>PEARL DWEK, JOSEPH KOHEN, EMPIRE EQUITY GROUP, INC. d/b/a 1st METROPOLITAN MORTGAGE, JEROME SHAPIRO, HELEN SHAPIRO, JOHN DOE ENTITIES I-X, and JOHN DOES I-X,<br><br>                        Defendants. | UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY<br><br>BANKRUPTCY NO. 07-11757 (KCF)<br><br>ADVERSARY PROCEEDING NO. 09-1425<br><br><br><br>**FIRST AMENDED COMPLAINT OF CHICAGO TITLE INSURANCE COMPANY** |

      Plaintiff Chicago Title Insurance Company ("Chicago Title" or "Plaintiff"), a Nebraska corporation duly authorized to conduct business in the State of New Jersey, with its principal place of business located at 601 Riverside Avenue, Jacksonville, Florida, by way of Complaint against defendants Pearl Dwek, Joseph Kohen, Jerome Shapiro, Helen Shapiro, Empire Equity Group, Inc. d/b/a, 1st Metropolitan Mortgage, alleges and says as follows:

## OVERVIEW

1.      This case involves a massive fraudulent scheme perpetrated by defendants Pearl Dwek, Joseph Kohen, Empire Equity Group, Inc. ("Empire"), and by nonparty Solomon Dwek, Amy Annecharico and others to defraud lenders and title insurers, including plaintiff insurance company, out of millions of dollars.

2.      Solomon Dwek and defendants, among others, arranged for mortgage lenders to advance millions of dollars in loan proceeds based upon fraudulent loan documents.  Solomon Dwek and defendants, among others, used the loan proceeds to enrich themselves at the expense of the mortgage lenders by pocketing the money rather than using the loan proceeds to complete purchases of the properties and/or pay off prior liens on the properties.  As a result, the lenders were left with either fictitious mortgages or virtually unsecured mortgages on the properties.

3.      The scheme described herein constitutes a conspiracy in violation of the federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., and a violation of state racketeering laws for which defendants are civilly liable.

4.      The defendants were integral participants in the fraudulent scheme. At the urging of her husband, Solomon Dwek, Pearl Dwek acted as the borrower on the loans and, upon information and belief, executed numerous documents related to the loans that contained false representations about, among other things, her income and employment history.  Joseph Kohen and/or Empire acted as the mortgage broker on the loans and prepared and executed numerous fraudulent documents.  Jerome Shapiro, a New Jersey attorney, was identified as the closing attorney for many of the loan transactions.  Upon information and belief, Jerome Shapiro either knowingly or unwittingly allowed Pearl Dwek, Joseph Kohen and others to use his attorney trust

account as their "personal piggybank" for the receipt and disbursement of funds from lenders.

5.     Defendant Jerome Shapiro has attempted to avoid the consequences of his improper actions by fraudulently conveying, among other things, real property to his wife Helen Shapiro for little or no consideration.

6.     Plaintiff Chicago Title is a victim of the fraudulent scheme engaged in by defendants.  Chicago Title issued title commitments and/or Closing Service Letters ("CSLs") to the lenders who made the loans.  Upon discovery of the scheme, these lenders made title-related claims against Chicago Title.  Chicago Title has settled three of these claims with lenders and has received an assignment of the lenders' claims against, among others, defendants.  Chicago Title also sues in its own right for losses caused directly to it by defendants.  Finally, Chicago Title reserves the right to amend this Complaint if it resolves any other title claims implicating these Defendants.

7.     Chicago Title now seeks to recover for the losses that it has sustained in its own capacity and as a subrogee of the lenders as a result of the actions of Pearl Dwek, Joseph Kohen, Empire, Jerome Shapiro, Helen Shapiro and potentially others.

## PARTIES

8.     Plaintiff Chicago Title is incorporated in Nebraska and has its principal place of business at 601 Riverside Avenue, Jacksonville, Florida.  Plaintiff is a title insurance company licensed to do business in the State of New Jersey.

9.     Defendant Pearl Dwek ("Mrs. Dwek") is an individual who, upon information and belief, resides at 311 Crosby Avenue, Deal, New Jersey.  Mrs. Dwek is

the wife of Solomon Dwek, a New Jersey real estate developer who was arrested for bank fraud in 2006.

10.    Defendant Jerome Shapiro ("Mr. Shapiro") is an attorney-at-law of the State of New Jersey with an office located at 23 Ridge Road, West Long Branch, New Jersey.

11.    Defendant Joseph Kohen ("Mr. Kohen") is an individual who, upon information and belief, resides and/or has a business address at 200 Monmouth Road, Deal, New Jersey.  Mr. Kohen has pled guilty to bank fraud.

12.    Defendant Empire doing business as 1st Metropolitan Mortgage is, upon information and belief, a New York corporation registered to do business in the State of New Jersey, with offices at 25 Philips Parkway, Montvale, New Jersey.

13.    At all relevant times, Empire employed Mr. Kohen to operate an Empire office in Oakhurst, New Jersey.

14.    Solomon Dwek, who was involved in the conspiracy described herein, is presently in bankruptcy.  On or about February 7, 2007, several creditors of Solomon Dwek filed an involuntary bankruptcy petition under the United States Bankruptcy Code.  As a result of the automatic stay, no claims are asserted herein against Solomon Dwek.

15.    Helen Shapiro ("Mrs. Shapiro") is a New Jersey resident who resides at 23 Ridge Road, West Long Branch, New Jersey.  Mrs. Shapiro is the wife of defendant Mr. Shapiro.

16.    Amy Annecharico, a New Jersey resident was involved in the conspiracy described herein.  She has filed a bankruptcy petition and, upon information and belief, her debts have been discharged.

17.    Defendants John Doe Entities I-X are fictitiously named business entities, whether corporations, limited liability companies or limited liability partnerships, partnerships or sole proprietorships who participated in and/or profited from the wrongful scheme set forth herein.

18.    Defendants John Does I-X are fictitiously named individuals who participated in and/or profited from the wrongful scheme set forth herein.

## JURISDICTION AND VENUE

19.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the Complaint states claims that arise under federal law.  The Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

20.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(a).

## BACKGROUND

21.    On information and belief, beginning in or about 2005, Mr. Kohen, the Dweks and potentially others embarked on a scheme of converting, stealing, embezzling and/or misappropriating funds from lenders in connection with real estate transactions.  This conduct included, but was not limited to, the conversion, theft, embezzlement and/or misappropriation of funds that were being wired into the attorney trust account of Mr. Shapiro.

22.     Mr. Kohen, on behalf of Empire, entered into agreements to originate mortgage loans for financial institutions, including but not limited to, Countrywide Home Loans, Inc. ("Countrywide"), and Flagstar Bank ("Flagstar"), (collectively, and individually, the "Lenders").

23.     Empire entered into brokerage agreements with these Lenders.

24.     Mr. Kohen and Empire agreed therein to follow the Lenders' guidelines in connection with loans on which they were acting as the mortgage broker and further agreed to provide the Lenders with truthful information about the loans.

25.     As set forth herein, Mr. Kohen and Empire acted as mortgage brokers on numerous mortgage loans in which Mrs. Dwek was identified as the borrower.   In his capacity as mortgage broker, Mr. Kohen prepared numerous applications and other loan documents.

26.     The applications and loan documents contained numerous false statements about, among other things, Mrs. Dwek's employment status, income, assets and liabilities.

27.     Upon information and belief, Mrs. Dwek signed these applications and loan documents.

28.     Mr. Shapiro permitted Mr. Kohen to utilize his trust account for the receipt of funds and further agreed to disburse funds from his attorney trust account upon the direction of Mr. Kohen, the Dweks and/or John Does I-X.

29.     Upon information and belief, Mr. Shapiro was the unwitting dupe of Mr. Kohen and the Dweks, among others.

30.     The Lenders wired the closing proceeds for the loans into Mr. Shapiro's actual attorney trust account and/or to an account that Mr. Kohen had opened in Mr. Shapiro's name.

31.     The Lenders instructed Mr. Shapiro, as the designated closing agent, to use the funds to pay off prior lienholders of the subject properties and/or to complete the sale of the subject properties.

32.     Contrary to those instructions, the prior liens were not paid off and the sales of properties were not consummated.

33.     Mr. Kohen, the Dweks and others used the loan proceeds for their own purposes.

34.     Upon information and belief, as part of this fraud, Mr. Kohen, the Dweks and/or others forged closing documents on behalf of unsuspecting homeowners and others.  Amy Annecharico, an assistant to Solomon Dwek, fraudulently notarized the forged signatures on deeds, HUD-1 statements and other loan documents.

35.     In connection with the subject real estate transactions, as described more fully below, Chicago Title issued title commitments and/or CSLs to Mrs. Dwek and/or Lenders.

36.     Pursuant to its obligations under the title commitments and CSLs, Chicago Title has already issued payments to Lenders and may be forced to purchase certain mortgages, pay certain outstanding liens and/or incur other losses in order to remedy the title defects caused by, among others, Mr. Kohen, Mr. Shapiro and Mrs. Dwek.

## SUBJECT MORTGAGE LOANS

### 115 Brighton Avenue, Ocean, New Jersey

37.    Upon information and belief, in or about January 2006, Mr. Kohen and Empire submitted a mortgage application to Countrywide on behalf of Mrs. Dwek for the stated purpose of having Mrs. Dwek purchase residential real property at 115 Brighton Avenue, Ocean, New Jersey ("115 Brighton Avenue Property").

38.    The loan application identified Mrs. Dwek's monthly income as $25,266 per month.  Upon information and belief, this representation was false.

39.    Countrywide, in reliance on the representations that were contained in the loan application submitted by Mrs. Dwek, Mr. Kohen and Empire agreed to make a mortgage loan in the amount of $656,250 to Mrs. Dwek.

40.    Chicago Title issued a title commitment to Countrywide that conditioned the issuance of a title policy upon, among other things, the recording of a deed from the property owner Paul Blandon to Mrs. Dwek and the payment of prior mortgages on the 115 Brighton Avenue Property.

41.    Mr. Kohen advised Chicago Title and Countrywide that Mr. Shapiro would represent Mrs. Dwek in connection with Mrs. Dwek's purported purchase of the 115 Brighton Avenue Property and the purported closing of the 115 Brighton Avenue Property.

42.    In February 2006, Chicago Title issued a CSL to Countrywide relating to Mr. Shapiro's obligation to close the loan.  The CSL provided, among other things: "The Company subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with that closing when conducted by the above-named Issuing Agent or the above named Attorney

[Jerome Shapiro] and when such loss arises out of: (1) Failure of the Issuing Agent or Attorney to comply with your written closing instructions to the extent that they relate to (a) the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including obtaining of documents and the disbursement of funds necessary to establish such title or lien . . . or (2) Fraud or misapplication by the Issuing Agent or Attorney in handling your funds in connection with the matters set forth in Paragraph 1 above."

43.     Countrywide issued closing instructions to Mr. Shapiro on or about February 10, 2006.  These written closing instructions required Mr. Shapiro, among other things, to verify the identity of all persons signing the loan documents and ensure the satisfaction of the conditions in the title commitment, including the recording of the deed and mortgage and the satisfaction of prior liens.

44.     Mr. Kohen, by telephone and/or fax, instructed Countywide to wire the proceeds of the loan ($656,250) to an account maintained in the name of Mr. Shapiro.

45.     Pursuant to the instruction that it received from Mr. Kohen, Countrywide wired $656,250 to an account maintained in the name of Mr. Shapiro on or about February 14, 2006.

46.     Upon information and belief, the account into which Countrywide wired the loan proceeds was not Mr. Shapiro's actual attorney escrow account, but an account maintained by Mr. Kohen.

47.     Contrary to the closing instructions that Countywide issued, none of the $656,250 loan proceeds were paid to the owners of 115 Brighton Avenue to purchase the property.

48.     Contrary to the closing instructions, a mortgage from Countrywide to Mrs. Dwek was not recorded.

49.     Mr. Kohen and Mrs. Dwek, among others, transmitted loan documents to Countrywide to create the false impression that the sale of the 115 Brighton Avenue Property had taken place and that Countrywide's mortgage loan had properly closed.  No closing ever occurred nor was even scheduled to occur.

50.     Among other things, Mr. Kohen, Mrs. Dwek and John Doe defendants, forged the signatures of the purported sellers of 115 Brighton Avenue and their attorney on a deed and a HUD-1 settlement statement.  Ms. Annecharico notarized the forged signatures.

51.     Upon information and belief, Mr. Kohen and Mrs. Dwek, among others, converted the $656,250 loan proceeds of the Countrywide loan.

52.     Countrywide subsequently discovered that it did not have a recorded mortgage on the 115 Brighton Avenue Property despite having fully funded the loan.

53.     Countrywide made a title claim against Chicago Title under the title commitment and the CSL.

54.     Countrywide has assigned to Chicago Title its claims relating to the 115 Brighton Avenue Property and Chicago Title is subrogated to the rights of Countrywide.

## 300 Bridlemere Avenue, Interlaken, New Jersey

55.    Upon information and belief, in or about January 2006, Mr. Kohen and Empire submitted a mortgage application to Countrywide on behalf of Mrs. Dwek for the stated purpose of having Mrs. Dwek purchase residential real property at 300 Bridlemere Avenue, Interlaken, New Jersey ("300 Bridlemere Avenue Property").

56.    The loan application identified Mrs. Dwek as being employed by both Deal Yeshiva, Inc. and Capital Real Estate Management, Inc.  Upon information and belief, Mrs. Dwek was not employed by Capital Real Estate Management.  The loan application also misstated the amount of Mrs. Dwek's employment income, investment income and rental income.

57.    Countrywide, in reliance upon the representations in the application made by Mrs. Dwek, Mr. Kohen and Empire, agreed to make a mortgage loan to Mrs. Dwek in the amount of $1,265,000.

58.    Chicago Title issued a title commitment to Countrywide that conditioned the issuance of a title policy upon, among other things, the recording of a deed from the property owners Elmer Kendrick and Henry Vaccaro to Mrs. Dwek and the payment of prior mortgages on the 300 Bridlemere Avenue Property.

59.    Mr. Kohen advised Chicago Title and Countrywide that Mr. Shapiro would represent Mrs. Dwek in connection with Mrs. Dwek's purported purchase of the 300 Bridlemere Avenue Property and the purported closing of the 300 Bridlemere Avenue Property Transaction.

60.    On or about April 12, 2006, Chicago Title issued a CSL to Countrywide relating to Mr. Shapiro's obligation to close the loan.  The CSL provided,

among other things: "The Company subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection with that closing when conducted by the above-named Issuing Agent or the above named Attorney [Jerome Shapiro] and when such loss arises out of: (1) Failure of the Issuing Agent or Attorney to comply with your written closing instructions to the extent that they relate to (a) the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including obtaining of documents and the disbursement of funds necessary to establish such title or lien . . . or (2) Fraud or misapplication by the Issuing Agent or Attorney in handling your funds in connection with the matters set forth in Paragraph 1 above."

61.    Countrywide issued closing instructions to Mr. Shapiro.  These written closing instructions required Mr. Shapiro, among other things, to verify the identity of all persons signing the loan documents and ensure the satisfaction of the conditions in the title commitment, including the recording of the deed and mortgage and the satisfaction of prior liens.

62.    Mr. Kohen instructed Countywide by fax and/or telephone to wire the proceeds of the loan to Mr. Shapiro's attorney trust account.

63.    Pursuant to the instruction that it received from Mr. Kohen, Countrywide wired $1,239,852.60 to an account maintained by Mr. Shapiro on or about April 17, 2006.

64.    Contrary to the closing instructions that Countywide issued, the loan proceeds were not paid to the owners of the 300 Bridlemere Avenue Property to purchase the property.

65.     Contrary to the closing instructions, a mortgage from Countrywide to Mrs. Dwek was not recorded.

66.     Mr. Kohen and Mrs. Dwek, among others, transmitted loan documents to Countrywide to create the false impression that the sale of the 300 Bridlemere Avenue Property had taken place and that Countrywide's mortgage loan had properly closed.

67.     Among other things, Mr. Kohen, Mrs. Dwek and/or John Doe defendants forged the signatures of the purported sellers of the 300 Bridlemere Avenue Property and their attorney on a deed and a HUD-1 settlement statement.   Ms. Annecharico notarized the forged signatures.

68.     Upon information and belief, Mr. Kohen and Mrs. Dwek, among others, converted the loan proceeds of the Countrywide loan.

69.     Countrywide subsequently discovered that it did not have a recorded mortgage on the 300 Bridlemere Avenue Property despite having fully funded the loan.

70.     Countrywide made a title claim against Chicago Title under the title commitment and CSL.

71.     Countrywide has assigned to Chicago Title its claims relating to the 300 Bridlemere Avenue Property Transaction and Chicago Title is subrogated to the rights of Countrywide.

## 411 Brookside Avenue, Deal, New Jersey

72.     Upon information and belief, in or about January 2006, Mr. Kohen and Empire, pursuant to a brokerage agreement between Empire and Flagstar, submitted

a mortgage application to Flagstar on behalf of Mrs. Dwek for the stated purpose of having Mrs. Dwek purchase residential real property at 411 Brookside Avenue, Deal, New Jersey ("411 Brookside Avenue Property").

73.     The loan application stated that Mrs. Dwek was employed by Capital Real Estate Management, Inc.  Upon information and belief, that representation is false.

74.     Flagstar, in reliance upon the representations contained in the loan application signed by Mrs. Dwek and submitted by Empire and Mr. Kohen, agreed to loan Mrs. Dwek the amount of $376,000 to purchase the 411 Brookside Avenue Property.  This loan was to be secured by a first mortgage on the 411 Brookside Avenue Property.

75.     Chicago Title issued a title commitment to Flagstar that conditioned the issuance of a title policy upon, among other things, the recording of a deed from the property owner to Mrs. Dwek and the payment of prior mortgages on the 411 Brookside Avenue Property.

76.     Mr. Kohen advised Chicago Title and Flagstar that Mr. Shapiro would represent Mrs. Dwek in connection with Mrs. Dwek's purported purchase of the 411 Brookside Avenue Property and the purported closing of the 411 Brookside Avenue transaction.

77.     On or about March 27, 2006, Chicago Title issued a CSL to Flagstar relating to Mr. Shapiro's obligation to close the loan.  The CSL provided, among other things, "The Company subject to the Conditions and Exclusions set forth below, hereby agrees to reimburse you for actual loss incurred by you in connection

with that closing when conducted by the above-named Issuing Agent or the above named Attorney [Jerome Shapiro] and when such loss arises out of: (1) Failure of the Issuing Agent or Attorney to comply with your written closing instructions to the extent that they relate to (a) the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including obtaining of documents and the disbursement of funds necessary to establish such title or lien . . . or (2) Fraud or misapplication by the Issuing Agent or Attorney in handling your funds in connection with the matters set forth in Paragraph 1 above."

78.    Flagstar issued closing instructions to Mr. Shapiro on or about March 29, 2006.  These written closing instructions required Mr. Shapiro, among other things, to verify the identity of all persons signing the loan documents and ensure the satisfaction of the conditions in the title commitment, including the recording of the deed and mortgage and the satisfaction of prior liens.

79.    Mr. Kohen instructed Flagstar by telephone and fax to wire the proceeds of the loan to an account maintained in the name of Mr. Shapiro.

80.    Pursuant to the instruction that it received from Mr. Kohen, Flagstar wired $376,000 to an account maintained in the name of Mr. Shapiro on or about March 29, 2006.

81.    Upon information and belief, the account into which Flagstar wired the loan proceeds was not Mr. Shapiro's actual attorney escrow account, but an account maintained by Mr. Kohen.

82.    Contrary to the closing instructions that Flagstar issued, the loan proceeds were not paid to the owners of the 411 Brookside Avenue Property to purchase the property.

83.    Contrary to the closing instructions, a mortgage from Flagstar to Mrs. Dwek was not recorded.

84.    Mr. Kohen and Mrs. Dwek, among others, transmitted loan documents to Flagstar to create the false impression that the sale of the 411 Brookside Avenue Property had taken place and that Flagstar's mortgage loan had properly closed.

85.    Among other things, Mr. Kohen, Mrs. Dwek and/or John Doe Defendants forged the signatures of the purported sellers of the 411 Brookside Avenue Property and their attorney on a deed and a HUD-1 settlement statement.  They also forged Mr. Shapiro's name on the HUD-1 settlement statement and the closing documents.  Ms. Annecharico notarized the forged signatures.

86.    Upon information and belief, Mr. Kohen and Mrs. Dwek, among others, converted the loan proceeds of the Flagstar loan.

87.    Flagstar subsequently discovered that it did not have a recorded mortgage on the 411 Brookside Avenue Property despite having fully funded the loan.

88.    Flagstar made a title claim against Chicago Title relating to the title commitment and the CSL.

89.    Flagstar has assigned to Chicago Title its claims against Mr. Kohen, Mrs. Dwek and Mr. Shapiro and Chicago Title is subrogated to Flagstar's rights against those individuals.

# FIRST COUNT
## (Fraud Against Mrs. Dwek and Mr. Kohen)

90.     Chicago Title repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

91.     Mr. Kohen and Mrs. Dwek made the following misrepresentations to the Lenders in connection with the subject mortgage loans:

a.     Mrs. Dwek misrepresented on the loan applications that she signed and that were submitted to the Lenders her employment status, her employment income, her assets, her rental income and her investment income.

b.     Mr. Kohen misrepresented to the Lenders Mrs. Dwek's employment status, employment income, assets, rental income and investment income.

c.     Mrs. Dwek and Mr. Kohen misrepresented to the Lenders, Mrs. Dwek's intent to discharge the 115 Brighton Avenue, 300 Bridlemere Avenue, and 411 Brookside Avenue properties.

d.     Mr. Kohen and Mrs. Dwek misrepresented to the Lenders and Chicago Title that Mr. Shapiro would act as the closing attorney for the 115 Brighton Avenue, 300 Bridlemere Avenue, and 411 Brookside Avenue Transactions.

e.     Mr. Kohen and Mrs. Dwek misrepresented to the Lenders and Chicago Title that Mr. Shapiro had closed the 115 Brighton Avenue, 300 Bridlemere Avenue, and 411 Brookside Avenue Transactions by forging Mr. Shapiro's name on HUD-1 settlement statements.

f.     Mr. Kohen and Mrs. Dwek misrepresented to the Lenders and Chicago Title through forged signatures of sellers on deeds that Mrs. Dwek had purchased 115 Brighton Avenue, 300 Bridlemere Avenue and 411 Brookside Avenue.

g.     Mr. Kohen and Mrs. Dwek misrepresented to the Lenders in wiring instructions sent to the Lenders that money wired to Mr. Shapiro's attorney trust account would be utilized in accordance with the HUD-1 Settlement Statements for the 115 Brighton Avenue, 300 Bridlemere Avenue and 411 Brookside Avenue Transactions.

h.     Mr. Kohen and Mrs. Dwek misrepresented to Countrywide and Flagstar in connection with the 115 Brighton Avenue and 411 Brookside Avenue loans, respectively, that the trust account into which they had requested the funds be wired was the legitimate attorney trust account of Mr. Shapiro.

92.     Mr. Kohen and Mrs. Dwek made the above misrepresentations with knowledge of their falsity and with the intention that the Lenders and Chicago Title would rely thereon and forward monies to Mr. Shapiro's trust account, or Mr. Kohen's account, for use in connection with the loan transactions.

93.     The Lenders relied on and were induced by Mr. Kohen and/or Mrs. Dwek's misrepresentations into making the loans and wiring funds to trust accounts to close the loans.

94.     Chicago Title relied upon the misrepresentations of Mrs. Dwek and Mr. Kohen in issuing title commitments and CSLs to the Lenders.

95.     As a direct result of the aforesaid wrongful acts by Mr. Kohen and/or Mrs. Dwek, Chicago Title, as a subrogee of the Lenders and in its own right, has been damaged.

WHEREFORE, Chicago Title Insurance Company demands Judgment against Pearl Dwek and Joseph Kohen for compensatory damages, punitive damages,

interest, costs of suit, including reasonable attorney's fees, and for such other relief as the Court deems just and proper.

## SECOND COUNT
### (Negligent Misrepresentations Against Mr. Kohen and Mrs. Dwek)

96.    Chicago Title repeats and realleges the allegations of the foregoing paragraphs as if set forth at length herein.

97.    Mr. Kohen and Mrs. Dwek made the following misrepresentations to the Lenders in connection with the subject mortgage loans:

a.    Mrs. Dwek misrepresented on the loan applications that she signed and that were submitted to the Lenders her employment status, her employment income, her assets, her rental income and her investment income.

b.    Mr. Kohen misrepresented to the Lenders, Mrs. Dwek's employment status, employment income, assets, rental income and investment income.

c.    Mr. Kohen and Mrs. Dwek misrepresented to the Lenders and Chicago Title that Mr. Shapiro would act as the closing attorney for the 115 Brighton Avenue, 300 Bridlemere Avenue and 411 Brookside Avenue Transactions.

d.    Mr. Kohen and Mrs. Dwek misrepresented to the Lenders and Chicago Title that Mr. Shapiro had closed the 115 Brighton Avenue, 300 Bridlemere Avenue and 411 Brookside Avenue Transactions by forging Mr. Shapiro's name on HUD-1 settlement statements.

e.    Mr. Kohen and Mrs. Dwek misrepresented to the Lenders and Chicago Title by, among other things, forging signatures of sellers on deeds, that Mrs. Dwek had purchased 115 Brighton Avenue, 300 Bridlemere Avenue and 411 Brookside Avenue.

f.      Mr. Kohen and Mrs. Dwek misrepresented to the Lenders in wiring instructions sent to the Lenders that money wired to Mr. Shapiro's attorney trust account would be utilized in accordance with the HUD-1 Settlement Statements for the 115 Brighton Avenue, 300 Bridlemere Avenue and 411 Brookside Avenue transactions.

g.      Mr. Kohen and Mrs. Dwek misrepresented to Countrywide and Flagstar in connection with the 115 Brighton Avenue and 411 Brookside Avenue loans, respectively, that the trust account into which they had requested the funds be wired was the legitimate attorney trust account of Mr. Shapiro.

98.    Mr. Kohen and Mrs. Dwek made the above misrepresentations with knowledge of their falsity and with the intention that the Lenders and Chicago Title would rely thereon and forward monies to Mr. Shapiro's trust account, or Mr. Kohen's account, for use in connection with the loan transactions.

99.    The Lenders relied on and were induced by Mr. Kohen and/or Mrs. Dwek's misrepresentations into making the subject mortgage loans and wiring funds to close the loans in a manner directed by Mr. Kohen.

100.    Chicago Title relied upon the aforesaid representations of Mr. Kohen and Mrs. Dwek in issuing title commitments and CSLs.

101.    As a direct result of the aforesaid wrongful acts by Mr. Kohen and/or Mrs. Dwek, Chicago Title, as a subrogee of the Lenders and in its own right, has been damaged.

WHEREFORE, Chicago Title Insurance Company demands Judgment against Pearl Dwek and Joseph Kohen for compensatory damages, interest, costs of suit,

including reasonable attorney's fees, and for such other relief as the Court deems just and proper.

### THIRD COUNT
**(Negligence Against Mr. Shapiro As To Monies
Wired Into His Trust Account)**

102.    Chicago Title repeats and realleges the allegations of the foregoing paragraphs as if set forth at length herein.

103.    Mr. Shapiro owed a duty of care to Countrywide and Chicago Title to ensure that money wired into his attorney trust account was properly disbursed in accordance with the Lenders' closing instructions.

104.    Mr. Shapiro owed a further duty of care to Countrywide and Chicago Title to safeguard the money wired into his attorney escrow account and to not allow third parties to have access to the funds in the attorney trust account.

105.    Mr. Shapiro breached his duty of care that he owed to Countrywide and Chicago Title by permitting Mr. Kohen and Mrs. Dwek to use his attorney escrow account for the receipt of funds and by further permitting Mr. Kohen and Mrs. Dwek to have access to Mr. Shapiro's attorney trust account.

106.    Mr. Shapiro's breach of his duty of care in connection with his attorney escrow account has proximately caused Countrywide and Chicago Title to suffer damages in connection with the 300 Bridlemere Avenue transaction.

WHEREFORE, Chicago Title Insurance Company demands Judgment against Jerome Shapiro for compensatory damages, interest, costs of suit, including reasonable attorney's fees, and for such other relief as the Court deems just and proper.

## FOURTH COUNT
### (Negligence Against Mr. Shapiro Relating to
### 115 Brighton Avenue and 411 Brookside Avenue Transactions)

107.   Chicago Title repeats and realleges the allegations of the foregoing paragraphs as if set forth at length herein.

108.   Mr. Shapiro owed a duty to protect Lenders and Chicago Title to prevent his associate, Mr. Kohen, from using his identity to defraud Lenders.

109.   Upon information and belief, Mr. Shapiro knew or should have known that Mr. Kohen was advising Lenders, including Countrywide and Flagstar, that Mr. Shapiro was acting as closing attorney on the 115 Brighton Avenue and 411 Brookside Avenue loans when he was not.

110.   Countrywide has suffered a loss as a result of Mr. Shapiro's negligence in connection with the 115 Brighton Avenue Loan.

111.   Flagstar has suffered a loss as a result of Mr. Shapiro's negligence in connection with the 411 Brookside Avenue Loan.

112.   Chicago Title has incurred expenses and will continue to incur expenses in connection with the 115 Brighton Avenue and 411 Brookside Avenue Loans.

WHEREFORE, Chicago Title Insurance Company demands Judgment against Jerome Shapiro for compensatory damages, interest, costs of suit, including reasonable attorney's fees, and for such other relief as the Court deems just and proper.

## FIFTH COUNT
### (Breach of Contract as to Empire Concerning 115 Brighton Avenue and 300 Bridlemere Avenue Transactions)

113.    Chicago Title repeats and realleges the allegations of the foregoing paragraphs as if set forth at length herein.

114.    Empire entered into brokerage agreements with Countrywide.

115.    Empire agreed therein that loan documents that they signed would contain truthful representations of the borrowers.

116.    Empire agreed to repurchase loans that they submitted to Countrywide that contained false information.

117.    The loan documents that Empire submitted to Countrywide in connection with the 115 Brighton Avenue and 300 Bridlemere Avenue transactions contained numerous misstatements.

118.    Countrywide and Chicago Title have been injured and will continue to suffer injury as a result of Empire's breach of contract.

WHEREFORE, Chicago Title Insurance Company demands Judgment against Empire Equity Group, Inc. d/b/a 1st Metropolitan Mortgage for compensatory damages, punitive damages, costs of suit, including reasonable attorney's fees, and for such other relief as the Court deems just and proper.

## SIXTH COUNT
### (Conversion Against Mrs. Dwek and Mr. Kohen)

119.    Chicago Title repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

120.    As set forth fully hereinabove, Mr. Kohen and/or Mrs. Dwek misappropriated monies provided by the Lenders for use in connection with the

purchase of property, including those intended to make the pay-offs set forth on the HUD-1s.

121.    By misappropriating such assets, Mr. Kohen and/or Mrs. Dwek converted such assets and exercised dominion and control over such assets in a manner inconsistent with the rights of the Lenders.

122.    Mr. Kohen and/or Mrs. Dwek had knowledge of the rights and interests of the Lenders in the assets.

123.    By virtue of such acts, Mr. Kohen and/or Mrs. Dwek maliciously, willfully and wantonly defrauded the Lenders.

124.    As a direct result of the aforesaid wrongful acts by Mr. Kohen and/or Mrs. Dwek, Chicago Title, as a subrogee of the Lenders and in its own capacity, has been damaged.

WHEREFORE, Chicago Title Insurance Company demands Judgment against Pearl Dwek and Joseph Kohen for compensatory damages, interest, punitive damages, costs of suit, including reasonable attorney's fees, and for such other relief as the Court deems just and proper.

## SEVENTH COUNT
### (Unjust Enrichment Against All Defendants)

125.    Chicago Title repeats and realleges the allegations contained in the foregoing paragraphs as if set forth fully herein.

126.    By misappropriating some or all of the loan proceeds that were to be used in connection with the Subject Transactions, Mr. Kohen, Mr. Shapiro, Empire, Mrs. Dwek, John Doe Entities I-X and John Does I-X benefited themselves.    Such

benefit constitutes an unjust enrichment of Mr. Kohen, Mr. Shapiro, Empire, Mrs. Dwek, John Doe Entities I-X and John Doe I-X at the expense of the Lenders.

WHEREFORE, Chicago Title Insurance Company demands Judgment against Pearl Dwek, Joseph Kohen, Empire Equity Group d/b/a 1st Metropolitan Mortgage, Jerome Shapiro, John Doe Entities I-X and John Does I-X for compensatory damages, imposition of a constructive trust on the attorney escrow account of Jerome Shapiro, an accounting, costs of suit, including reasonable attorney's fees and for such other relief as the Court deems just and proper.

## EIGHTH COUNT

### (New Jersey Racketeer Influenced and Corrupt Organizations Act Against Mr. Kohen and Mrs. Dwek)

127.    Chicago Title repeats and incorporates the allegations of the foregoing paragraphs as if set forth at length herein.

### The Enterprise

128.    Mr. Kohen, Mrs. Dwek, Solomon Dwek and Amy Annecharico constitute persons pursuant to N.J.S.A. 2C:41-1(a)(2)(b), because each is an individual or entity or enterprise capable of holding a legal or beneficial interest in property.

129.    Together, Mr. Kohen, Mrs. Dwek, Solomon Dwek, Amy Annecharico and John Does 1-10 constitute an enterprise pursuant to N.J.S.A. 2C:41-1(a)(2)(c) because they represent an ongoing organization, in which the various members of the Enterprise functioned as a continuing unit, separate and apart from the pattern of racketeering acts in which individual Enterprise members engaged.

130.    Mr. Kohen was the Enterprise's "insider."  As a mortgage broker, Mr. Kohen held a position of trust, and he could authorize requests for title

commitments and CSLs.  Until he was discovered, Mr. Kohen controlled the flow of money to the Enterprise.

131.    Mrs. Dwek was a facilitator.  This individual ensured that the banking institutions' funds would be issued and distributed to Mr. Kohen and Mr. Shapiro, and other members of the Enterprise by forging documents and falsely notarizing documents.

132.    Solomon Dwek was also a facilitator.  Together with Mrs. Dwek, he arranged for the loans and participated in the submission of fraudulent documents to the Lenders.

133.    Amy Annecharico is also a facilitator.  She notarized the forged signatures on loan documents at the direction of Solomon Dwek.

134.    Each member of the Enterprise participated in the Enterprise and conspired in the Enterprise's pattern of racketeering activity.

135.    Each member of the Enterprise intended to defraud the Lenders and Chicago Title.  Moreover, each member understood that he/she would have to violate the law and deceive the Lenders and Chicago Title for the Enterprise to profit in general and for each member to profit in specific.  Thus, each member of the Enterprise shared the same purpose, achieved the same result, and attacked the same victim.

**Predicate Acts**

136.    Mr. Kohen and Mrs. Dwek engaged in the following incidents of racketeering conduct:

a.    Bank fraud in connection with the 115 Brighton Avenue, 300 Bridlemere Avenue and 411 Brookside Avenue transactions, including, but not limited

to: (1) the submission to the Lenders of loan applications containing false income and asset information, (2) the submission of forged loan documents, and (3) conversion of loan proceeds all as described in greater detail above.

    b.  Wire fraud in connection with each of those transactions.

    c.  Theft in violation of <u>N.J.S.A</u>. 2C:41-1(a)(1)(n) and theft by deception in violation of <u>N.J.S.A.</u> 2C:20-4, which is incorporated into <u>N.J.S.A.</u> 2C:41-1(a)(1)(n) by reference.

    d.  Fraud in violation of <u>N.J.S.A.</u> 2C:41-1(a)(1)(o), which is incorporated into <u>N.J.S.A.</u> 2C:41-1(a)(1)(o) by reference.

    e.  Wire fraud in violation of 18 U.S.C. § 1343 because Mr. Kohen, among others, upon information and belief, used wire communications, such as e-mail and facsimile communications in the furtherance of this fraud.

    137. The incidents set forth in the preceding paragraphs represent a pattern of racketeering activity: (1) because they took place continuously progressing from one property acquired by Mrs. Dwek and/or Solomon Dwek to another; and (2) because the Enterprise participants repeatedly used the same methods to defraud Chicago Title.

    138. These incidents further affected trade and commerce in general and the purchase and/or financing of the properties identified <u>supra</u>.

    WHEREFORE, Chicago Title Insurance Company demands Judgment against Pearl Dwek and Joseph Kohen for compensatory damages, treble damages pursuant to <u>N.J.S.A.</u> § 2C:41-4(c), interest, costs of suit, including reasonable attorney's fees, and for such other relief as the Court deems just and proper.

## NINTH COUNT
### (Violation of 18 U.S.C. § 1962(c) Against Mr. Kohen and Mrs. Dwek)

139.   Plaintiff repeats the allegations of the foregoing paragraphs as if set forth herein in their entirety and incorporates them herein by reference.

140.   Mr. Kohen, Mrs. Dwek, Solomon Dwek and Amy Annecharico constitute "persons" pursuant to 18 U.S.C. § 1961(3).

141.   In or about 2005, Mr. Kohen, Mrs. Dwek and others formed an association, in fact, to steal money from mortgage lenders.

142.   This association, in fact, included Solomon Dwek, Mrs. Dwek's husband, who upon information and belief, helped direct the activities of the association, in fact.

143.   The association, in fact, also included Amy Annecharico, an employee at Deal Yeshiva, an entity at which Solomon Dwek served as an officer. Ms. Annecharico notarized documents relating to the subject loan transactions, including notarizing signatures that she knew or should have known were forged.

144.   The association, in fact, of which Mr. Kohen and Mrs. Dwek were members constituted an enterprise as defined by 18 U.S.C. § 1961 (4) that has engaged in interstate commerce.

145.   Upon information and belief, Defendants knowingly and willfully have combined, conspired, confederated and agreed with each other and with others to conduct and participate, directly and indirectly, through a pattern of schemes to defraud Plaintiff by providing it with false information and causing Plaintiff to issue commitments, CSLs and /or policies for fictitious transactions.

146.    Upon information and belief, Defendants have utilized e-mail, the internet, the telephone lines and the mail to further their schemes.

147.    Through the aforementioned pattern of racketeering activity, Defendants maintained an interest in and control of the enterprise, which is engaged in interstate commerce.

148.    The activities of Defendants affect trade and commerce.

149.    By committing the above acts, Defendants have committed wire fraud in violation of 18 U.S.C. § 1343 and have engaged in a pattern of "racketeering activity" as defined in 18 U.S.C. § 1961(5).

150.    As a result of the aforementioned activities, the Defendants violated 18 U.S.C. § 1962(c) by conducting and participating in the conduct of an enterprise through a pattern of racketeering activity.

151.    As a direct and proximate result of Defendants' racketeering activity, Plaintiff has suffered financial loss.

WHEREFORE, Chicago Title Insurance Company demands Judgment against Pearl Dwek and Joseph Kohen for compensatory damages, treble damages pursuant to 18 U.S.C. § 1964, interest, costs of suit, including reasonable attorney's fees, and for such other relief as the Court deems just and proper.

## <u>TENTH COUNT</u>
### (Federal RICO – Conspiracy as to Mrs. Dwek and Mr. Kohen)

152.    Plaintiff repeats the allegations of the foregoing paragraphs as if set forth herein in their entirety and incorporates them herein by reference.

153.    Defendants Mr. Kohen and Mrs. Dwek conspired to commit the predicate acts set forth above and to violate 18 U.S.C. § 1962(c).

154.   As such, Defendants' conspiracy violates 18 U.S.C. § 1962(d).

155.   As a direct and proximate result of the aforesaid conspiracy, Plaintiff has suffered injuries and losses totaling in excess of $1 million.

WHEREFORE, Chicago Title Insurance Company demands Judgment against Pearl Dwek and Joseph Kohen for compensatory damages, treble damages pursuant to 18 U.S.C. § 1964, interest, costs of suit, including reasonable attorney's fees, and for such other relief as the Court deems just and proper.

## ELEVENTH COUNT
### (Breach of Promissory Note Against Mrs. Dwek)

156.   Plaintiff repeats the allegations of the foregoing paragraphs as if set forth herein in their entirety and incorporates them herein by reference.

157.   Upon information and belief, Mrs. Dwek executed a promissory note to Countrywide on or about February 14, 2006 in the principal amount of $656,250.

158.   Mrs. Dwek has defaulted on the February 14, 2006 promissory note by, among other things, failing to make payments when due.

159.   Chicago Title is the assignee of Countrywide's rights under the February 14, 2006 promissory note.

WHEREFORE, Chicago Title Insurance Company demands Judgment against Pearl Dwek for compensatory damages, interest, costs of suit, including reasonable attorney's fees, and for such other relief as the Court deems just and proper.

## TWELFTH COUNT
### (Breach of Promissory Note Against Mrs. Dwek)

160.   Plaintiff repeats the allegations of the foregoing paragraphs as if

set forth herein in their entirety and incorporates them herein by reference.

161.    Upon information and belief, Mrs. Dwek executed a promissory note to Countrywide on or about April 14, 2006 in the principal amount of $1,265,000.

162.    Mrs. Dwek has defaulted on the April 14, 2006 promissory note by, among other things, failing to make payment when due.

163.    Chicago Title is the assignee of Countrywide's rights under the April 14, 2006 promissory note.

WHEREFORE, Chicago Title Insurance Company demands Judgment against Pearl Dwek for compensatory damages, interest, costs of suit, including reasonable attorney's fees, and for such other relief as the Court deems just and proper.

## THIRTEENTH COUNT
### (Fraud against Mr. Shapiro)

164.    Plaintiff repeats its allegations of the foregoing paragraphs as if set forth herein in their entirety and incorporates them herein by reference.

165.    Upon information and belief, Mr. Shapiro knew that Messrs. Dwek and Kohen were falsely representing to mortgage lenders that Mr. Shapiro would act as closing attorney for loans funded by the Lenders.

166.    Upon further information and belief, Mr. Shapiro also knew that Messrs. Dwek and Kohen were using Mr. Shapiro's attorney trust account to receive funds wired by Lenders in connection with fraudulent loan transactions.

167.    Despite such knowledge that his name and trust account were to be used for fraudulent purposes, Mr. Shapiro allowed Messrs. Dwek and Kohen to falsely represent that he would close the subject mortgage loans and that funds should be wired into his attorney trust account.

168.   Chicago Title, as subrogee for Countrywide and Flagstar, has been injured as a result of Mr. Shapiro's fraud.

WHEREFORE, Chicago Title Insurance Company demands judgment against Jerome Shapiro for compensatory damage, punitive damages, interest, costs of suit, including reasonable attorney's fees, and for such other relief as the Court deems just and proper.

## FOURTEENTH COUNT
### (Fraudulent Transfer As To Helen Shapiro)

169.   Plaintiff repeats its allegations of the foregoing paragraphs as if set forth herein in their entirety and incorporates them herein by reference.

170.   At all relevant times prior to May 8, 2006, Mr. Shapiro and Helen Shapiro jointly owned residential real property at 23 Ridge Road, West Long Branch, New Jersey (the "23 Ridge Road Property").

171.   Upon information and belief, Mr. Shapiro learned from Mr. Kohen on or about May 1, 2006 that his decision to allow Mr. Dwek and Mr. Shapiro to falsely represent to lenders that he would act as closing attorney on certain mortgage transactions and to use his attorney trust account to misappropriate funds distributed by lenders for fictitious loan closings was soon to be discovered by, among others, the lenders.

172.   On May 8, 2006, Mr. Shapiro executed a deed that conveyed the 23 Ridge Road Property to Mrs. Shapiro.

173.   Upon information and belief, Mrs. Shapiro did not pay any consideration for the conveyance of the 23 Ridge Road Property.

174.   Mr. Shapiro recorded the deed of the 23 Ridge Road Property with the Monmouth County Clerk's Office at Book 8561, page 8695.

175.   Mr. Shapiro's conveyance of his interest to the 23 Ridge Road Property to his wife was done with the intent of hindering, delaying and defrauding his creditors, including lenders who had been advised by Mr. Kohen and Solomon Dwek that Mr. Shapiro was acting as closing attorney.

176.   Mr. Shapiro's conveyance of his interest to the 23 Ridge Road Property to his wife constitutes a fraudulent transfer pursuant to N.J.S.A. 25B:2-3 and N.J.S.A. 25:2-20, et seq.

WHEREFORE, Chicago Title Insurance Company demands judgment against Jerome Shapiro and Helen Shapiro declaring that the May 8, 2006 transfer of the 23 Ridge Road Property was fraudulent, revoking the transfer of the 23 Ridge Road Property to Helen Shapiro, enjoining Jerome Shapiro of further conveyance  of the 23 Ridge Road Property, awarding costs of suit, including reasonable attorney's fees, and for such other relief as the Court deems just and proper.

## FIFTEENTH COUNT
### (Fraudulent Conveyance Against Pearl Dwek)

177.   Plaintiff repeats its allegations of the foregoing paragraphs as if set forth herein in their entirety and incorporates them herein by reference.

178.   Mrs. Dwek, in addition to participating in fraudulent loan transactions that Messrs. Dwek and Kohen orchestrated, also assisted Mr. Dwek in hindering, delaying and defrauding his creditors.

179.   Among other things, Mr. Dwek wrote a check to Mrs. Dwek on or about January 6, 2006 in the amount of $100,000.

180.    The transfers from Mr. Dwek to Mrs. Dwek, including the $100,000 transfer set forth above, occurred at the same time Mr. Dwek was defrauding creditors into funding fictitious loan transactions.

181.    Upon information and belief, there were other transfers of funds and personal property to Mrs. Dwek for no consideration at a time when Mr. Dwek was insolvent and with the intent to hinder and defraud his creditors.

182.    Mr. Dwek's conveyance of personal property, including the $100,000 transfer set forth above, constitutes a fraudulent transfer pursuant to N.J.S.A. 25B:2-2 and N.J.S.A. 25:2-20, et seq.

WHEREFORE, Chicago Title Insurance Company demands judgment against Pearl Dwek revoking all transfers that Solomon Dwek made to Pearl Dwek between November 1, 2005 and the date of the filing of his bankruptcy petition, awarding costs of suit, including reasonable attorney's fees, and for such other relief as the Court deems just and proper.

RIKER DANZIG SCHERER HYLAND
        & PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey  07962
Attorneys for Chicago Title Insurance Company


By:        /s/ Joseph L. Schwartz
        JOSEPH L. SCHWARTZ

DATED:  May 5, 2010

## JURY DEMAND

Chicago Title Insurance Company hereby demands trial by jury of all issues so triable.

RIKER DANZIG SCHERER HYLAND
& PERRETTI LLP
Headquarters Plaza
One Speedwell Avenue
Morristown, New Jersey  07962
(973) 538-0800
Attorneys for Chicago Title Insurance Company


By:      /s/ Joseph L. Schwartz
         JOSEPH L. SCHWARTZ

DATED:  May 5, 2010

## CERTIFICATION PURSUANT TO L. Civ. R. 11.2

To the best of my knowledge, information and belief, I certify that the matter in controversy is not the subject of any action pending in any court or of a pending arbitration proceeding in connection with the subject of the action, with the exception of In re Solomon Dwek, Chicago Title Insurance Company v. Solomon Dwek, 07-11757-KCF, Adv. Proceeding No. 09-1009, before Judge Kathryn C. Ferguson, and the related adversary proceedings.  I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_/s/ Joseph L. Schwartz_____
JOSEPH L. SCHWARTZ

DATED:  May 5, 2010

4039168.1